## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CONSEJO DE SALUD DE PUERTO RICO, INC., doing business under its trade name Med Centro, Eduardo Martinez-Tull, Víctor Montalvo-Martell,<br><br>Plaintiffs,<br><br>Vs<br><br>UNITED STATES OF AMERICA, ALEX M. AZAR, in his official capacity of the Department of Health and Human Services,<br><br>Defendants. | CIVIL NO. _____<br><br>COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND JURY DEMAND |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

**TO THE HONORABLE COURT**:

Plaintiffs, for themselves and on behalf of others similarly situated (or collectively ("Plaintiffs"), by and through their attorney, and most respectfully STATE, ALLEGE AND PRAY:

### Introduction

1.  We start form a basic proposition: equality and human rights must be guaranteed to every United States citizen. However, United States citizens residing in Puerto Rico are burdened with a second rate health rate system on the verge of collapse. This second rate health care system is perpetuated by Puerto Rico's disparate treatment in federal funding in Medicaid, Medicare and the State Children's Health Insurance Program (SCHIP).

2.      Puerto Rico is facing an imminent Medicaid funding crisis, putting nearly one million

United States citizens at risk of losing their health-care coverage.

3.      Barring immediate Court intervention, Puerto Rico will not have the necessary funds

for its Medicaid program to continue operating in 2018.

4.       The United States' disparate treatment in health care funding directly targets the most

vulnerable of its citizens residing in Puerto Rico: the poor, elderly and unprivileged

children.  This disparate treatment is vulgar, conspicuous and egregious.

5.      The consequences of inadequate funding are passed down to the weakest link on the

chain in the healthcare system: providers and patients. Plaintiffs are a provider and

two patients.

### *Parties*

6.      Plaintiff Consejo de Salud de Puerto Rico, Inc. ("Med Centro") is a community based

non-profit corporation duly organized under the laws of the Commonwealth of Puerto

Rico and duly designated under the Medicaid statute as a Federally Qualified Health

Center ("FQHC").  Med Centro receives federal grant funds under Section 330 of the

Public Health Service Act, 42 U.S.C. §254b. Med Centro provides primary health care

and related services to Medicaid, Medicare and SCHIP eligible patients.

7.      Plaintiff Eduardo Martinez-Tull is a United States citizen residing in Ponce, Puerto

Rico. Mr. Martinez-Tull is a Medicaid beneficiary.

8.    Plaintiff Víctor Montalvo-Martell is a United States citizen residing in Ponce, Puerto

Rico. Mr. Montalvo-Martell is a Medicare beneficiary.

9.     Defendant Alex M. Azar is the Secretary of the Department of Health and Human

Services.  Defendant Hargan is responsible for implementing Puerto Rico's disparate

treatment in federal funding in Medicaid, Medicare and SCHIP. Defendant Hargan

is sued in his official capacity only.

### *Jurisdiction and Venue*

10.    Under U.S. Const. Art. III §2,this Court has jurisdiction because the rights sought to

be protected herein are secured by the United States Constitution.  Jurisdiction is

proper 28 U.S.C. §1331, 5 U.S.C. §702, 5 U.S.C. §706, the United States Constitution

and federal common law.

11.    This action seeks declaratory relief pursuant to the Declaratory Judgment Act,

28U.S.C. §§ 2201-02, Rules 57 and 65 of the Federal Rules of Civil Procedure.

12.    Venue is proper in this District under 28 U.S.C. § 1391(e) as to the defendants

because defendant Hargan is an officer of the United States sued in his official

capacity and because this judicial district is where a substantial part of the events or

omissions giving rise to the claims occurred.

<u>Consejo de Salud de Puerto Rico, Inc., et. al. v. United States</u>                    *Complaint*
<u>of America, et. al.,</u>

## *Factual Background*

I.     **Medicaid**

13.    The Medicaid program, which was enacted in 1965, is jointly supported by federal

and state funds and directly administered by state governments. Its purpose is to

provide medical assistance to indigent families with dependant children, as well as

indigent disabled, blind, and aged individuals.  42 U.S.C. §1396, *et. seq.*

14.    The Commonwealth of Puerto Rico is a state for Medicaid purposes. 42 U.S.C. §

1396a(a)(10).

15.    The Medicaid program makes health care services available to poor women, children

and certain other individuals.  Participation  in the Medicaid program by any State is

voluntary.  However, once such an election is made, the State must comply with all

federal requirements.

16.    Since 1994 Puerto Rico has mandated enrollment of its Medicaid beneficiaries in

managed care.  Originally called *La Reforma* and renamed *Mi Salud* in 2010 this

program  provides  all  Medicaid  health  services  through  separate  managed  care

organizations island-wide.

17.    As of 2016 almost half of the population of Puerto Rico is covered by Medicaid (*Mi*

*Salud*), with an additional 11% covered by Medicare.[1]

---

[1]

See: Center for Puerto Rican Studies at City University of New York, *Understanding Puerto*
*Rico's Health Care Crisis* available at

Consejo de Salud de Puerto Rico, Inc., et. al. v. United States                *Complaint*
of America, et. al.,

18.     Although Puerto Rico is required to comply with all federal Medicaid requirements

        as if it were a State, Puerto Rico's Medicaid program is funded as an unincorporated

        territory.   Thus, Puerto Rico's Medicaid program is not adequately funded for

        discriminatory and constitutionally infirm reasons.

19.     Federal Medicaid funding to the States and the District of Columbia is open ended -

        that is, not subject to any cap. The federal government reimburses each state for a

        portion of the state's Medicaid expenditure.  The federal share is known as the federal

        medical assistance percentage (FMAP).  The FMAP is determined by a formula set

        in statute and varies by state, with a higher reimbursement rate provided to states with

        lower per capita income, and vice versa.  There is a statutory minimum FMAP rate

        of 50% and a statutory maximum FMAP rate of 83%. If a State's per capita income

        is *lower* than the national average, the Federal share is *increased*, with a statutory

        maximum of 83 percent. 42 U.S.C. §1396d(b); 42 C.F.R. §433.10.

20.     The formula squares both the State and national average per capita incomes; this

        procedure magnifies any difference between the State's income and the national

        average. Consequently, Federal matching to lower income States is given an

        additional boost by the squaring effect, and Federal matching to higher income States

        is further decreased, within the statutory 50–83 percent limits. *Id.*

_____

https://centropr.hunter.cuny.edu/events-news/puerto-rico-news/health-care/understanding-puerto-rico%E2%80%99s-health-care-crisis

21.   In fiscal year 2016, nine states, including the District of Columbia had a FMAP rate
of 70% or above, with Mississippi having the highest rate at 74.17%.[2]

22.   The FMAP for Puerto Rico is not based on per capita income.  Instead, it is <u>set</u> by
statute at 55 percent. Puerto Rico, which has the *lowest* per capita income of any state
in the Nation, is limited by statute to almost  the *lowest* FMAP available; 55% (for
funding purposes Puerto Rico is treated as if it was the state with the *highest* per
capita income.)

23.   In 2014 the poverty rate in Puerto Rico (46.2%) was higher than the poverty rate in
any U.S. State.  State poverty rates ranged from 9.2% (New Hampshire) to 21.5%
(Mississippi) in that year.[3]

24.   Puerto Rico's FMAP rate would be 83 percent, the maximum rate allowable under
current Medicaid law, if not for the Congressionally imposed territorial cap.

---

[2]

This information is drawn from Alison Mitchell, "Medicaid's Federal Medical Assistance
Percentage (FMAP)," Congressional Research Service, February 9, 2016.

[3]

In 2014 median household income in Puerto Rico of $18,928 was lower than median
household income in any U.S. state. Among the 50 states and DC, Mississippi had the lowest
median household income at $39,680 in 2014.  See: U.S. Census Bureau, American
Community Survey and Puerto Rico Community Survey, 2014, One-Year Estimates,"S.1901:
Income in the Past 12-months," available at https://www.census.gov/programs-surveys/acs/

In 2014, 46.2% of the population in Puerto Rico had family income below the federal poverty
threshold, representing approximately 1.62 million people. Children (under the age of 18)
had a higher poverty rate (58.4%) than persons aged 18 to 64 (43.5% or persons 65 and older
(40.4%). *Id.*

25.     Puerto Rico's disparate treatment is subject to a second cap. In Puerto Rico Medicaid funding is ***not*** open ended.

26.     Not only is the FMAP for Puerto Rico set by statute at 55 percent, it is ***further*** subject to the dollar limitations specified in the territorial cap found in 42 U.S.C. §1308. 42 C.F.R. § 433.10 (b).   Thus, Puerto Rico is actually subject to two instances of discriminatory treatment in its Medicaid funding.

27.     Because of the annual statutory cap, Puerto Rico's effective FMAP- the actual federal contribution to the island's Medicaid program - historically has been between 15 and 20 percent a year. Puerto Rico was spending upwards of $1.4 billion in territory funds to provide health care services to more than 1.2 million low income beneficiaries, and receiving less than $400 million from the federal government for this purpose.  If Puerto Rico were instead treated equally as any other State, the United States Government Accountability Office estimates that federal Medicaid spending would be up to $2.1 billion per year.[4]

28.     In 2010, Congress enacted the Patient Protection and Affordable Care Act (ACA), 42 U.S.C. §18001 *et seq.* (2010).  (Prior to ACA funding, the federal Medicaid funds covered only 16% of annual expenditures.[5])

---

[4]https://www.gao.gov/assets/670/661334.pdf

[5]See: United States Government Accountability Office, Medicaid and CHIP, April 2016, p. 17, available at http://www.gao.gov/assets/680/676438.pdf

29.   ACA made three principal changes to federal contributions to Puerto Rico Medicaid:

(1) the FMAP (the % federal contribution to each dollar spent by the Commonwealth, up to the cap) was permanently raised from 50% to 55%; (2) funding for the territories was increased by $7.3 billion above their statutory caps for the time period covering July 1, 2011 and September 2019, of which Puerto Rico received $6.4 billion (ACA §2005); and, in lieu of tax subsidies for Marketplace coverage available to mainland citizens, the territories received an additional $1billion in supplemental Medicaid funding, of which $925 million went to Puerto Rico (ACA §1323).

30.   Beginning in 2011, Puerto Rico had access to an additional allotment of funding (that is, funds in addition to the pre existing Medicaid territorial cap) totaling $6.4 billion and were available until 2019.  According to the Department of Health and Human Services, Puerto Rico is on track to exhaust the additional ACA funding as early as first quarter 2018.  When this funding expires, Puerto Rico will revert to the original statutory caps of less than $400 million.  If the Commonwealth continues to contribute the same amount to its Medicaid program as it is contributing today, total spending would decrease to 44% less than would be required to maintain current enrollment and 500,000 United States citizens residing in Puerto Rico would lose coverage.[6]

---

[6] HHS noted that this scenario "is consistent with Commonwealth policy before ... ACA, when Federal funds covered about 16 percent of annual expenditures, as opposed to the 50 percent that would be expected if the Commonwealth spent only enough to get the maximum Federal match.  In the content of the current economic crisis and fiscal controls, however,

31.     If, instead, Puerto Rico spends no Commonwealth funds above the amount necessary
        to obtain the maximum federal funding total spending would be 80% less than what
        would be needed to maintain current enrollment, and enrollment would drop by nearly
        900,000. *Id.*

32.     The ACA, however, further highlights Puerto Rico's discriminatory treatment under
        Medicaid. Although ACA provided $6.4 billion increase in Medicaid spending, it
        made that funding temporary. And, unlike States where federal spending is open
        ended, federal Medicaid spending in Puerto Rico is still "capped." Likewise,
        although ACA increased Puerto Rico's FMAP rate from 50% to 55%, it is still
        significantly below the 83% rate it would receive if its rate was based on a non-
        discriminatory per capita basis.

33.     According to the Center for Medicare and Medicaid Services ("CMS"), Puerto Rico's
        supplemental funding will be depleted before the end of calendar year 2018, a date
        that has come to be known as the "Medicaid cliff." Once Puerto Rico depletes this
        supplemental funding it will revert to receiving only its annual capped federal
        allotment, which is expected to be $357.8 million in Fiscal year 2018.[7]

---

Commonwealth officials might decide to use scare resources for competing priorities such
as physical infrastructure or debt payments rather than for medicaid and spend only up to the
amount needed to obtain the maximum Federal match." See:
https://aspe.hhs.gov/system/files/pdf/255461/PuertoRicoEnrollment_DataPoint.pdf

[7]

Puerto Rico drew down an average of $917 million in supplemental funding annually

34.     It is also noteworthy that the temporary increase in Medicaid funding to the territories is the only coverage provision in the law that sunsets in this manner.

35.     The ACA perpetuated Puerto Rico's discriminatory treatment under Medicaid in another respect. The states and the District of Columbia are permitted to expand eligibility for Medicaid to certain population groups (in general, non-elderly adults with incomes up to 133 percent of the federal poverty level). If a state elects to expand eligibility for Medicaid to individuals within these groups, the federal government covers 100 percent of the cost of covering this newly-eligible population from 2014 to 2016, 95 percent of the cost in 2017, 94 percent of the cost in 2018, 93 percent in 2019, and 90 percent in 2020 and beyond. While Puerto Rico is authorized to expand eligibility for Medicaid to these new population groups, it is not eligible for the enhanced federal contribution to finance their care.[8]

36.     Plaintiff Med Centro is required to provide health care services to Medicaid beneficiaries in the same manner as if it were located in any of the 50 States.

---

between fiscal years 2012 and 2016.  In fiscal year 2012, the first full year in which this funding was available, Puerto Rico drew down $564 million.  In fiscal year 2016, Puerto Rico drew down $1.3 billion.

[8]

For more information about the ACA changes to Medicaid, see CRS Report R41210, *Medicaid and the State Children's Health Insurance Program (CHIP) Provisions in ACA: Summary and Timeline*, by Evelyne P. Baumrucker et al.

## II.    Medicare

37.    Medicare is the federal insurance program for people who are 65 years or older,

certain younger people with disabilities, and people with End-Stage Renal Disease

(permanent kidney failure requiring dialysis or a transplant, sometimes called ESRD).

It was established in 1965 under Title XVIII of the Social Security Act (SSA).

38.    Today, Medicare consists of four distinct parts:

a.    Medicare Part A (Hospital Insurance): Part A covers inpatient hospital stays,

care in a skilled nursing facility, hospice care, and some home health care.

b.    Medicare Part B (Medical Insurance): Part B covers certain professional

medical services, outpatient care, medical supplies, and preventive services.

c.    Medicare Part C (Medicare Advantage Plans): Part C is a type of health care

offered by a private company that contracts with Medicare to provide beneficiaries with all

Part A and Part B benefits.    Medicare Advantage Plans include Health Maintenance

Organizations, Preferred provider Organizations and Private Fee for Service Plans.

d.    Medicare Part D (Prescription Drug Coverage): Part D adds prescription drug

coverage to Part A. These plans are offered by insurance companies approved by Medicare.

39.    Medicare Parts A and B are also known as original Medicare.

40.    Puerto Rico ranks 26th among states in total Medicare beneficiary population.

41.    United States citizens residing in Puerto Rico are subject to the same social security

and medicare taxes as citizens residing in any State of the Union.

42.     However, Medicare reimbursement rates are lower than those of the States, and the
Medicare Advantage program is paid approximately 43% of the average rate in the
States.

43.     Since its enactment Medicare established two separate reimbursement formulas: one
for the States and one for Puerto Rico.  The formulas for Puerto Rico were designed
to provide lower reimbursement rates for the same work.  These formulas were not
only separate, but also unequal.

44.     For example, the Medicare, Medicaid and SCHIP Benefits Improvement and
Protection Act of 2000 (BIPA) established a floor payment at $525 per person per
month for 2001. However, this floor did not apply to Puerto Rico. Puerto Rico's
reimbursement rate was $329 per person per month in 2001.


*Medicare's per person per month rates for Puerto Rico beneficiaries of Medicare
Advantage 43% below the U.S. average*


45.     Beneficiaries entitled to Medicare Part A have the option of enrolling in Part B, which
provides coverage for physician's services, outpatient hospital services and other
medical services.  An automatic enrollment process applies to residents of the 50
states and the District of Columbia, but it does not apply to residents of Puerto Rico.

46.     This automatic enrollment process also applies to residents of other U.S. territories,
but not Puerto Rico.

47.   The historical inequalities facing residents of Puerto Rico under the traditional fee for service (FFS) Medicare has resulted in an abnormally high percentage of beneficiaries enrolling in Medicare Advantage (MA) plans.

48.   MA plans are paid a per person monthly amount. Medicare determines a plan's payment by comparing its *bid* to a *benchmark*. A bid is the plan's estimated cost of providing Medicare covered services. A benchmark is the maximum amount the federal government will pay for providing those services in the plan's service area.

49.   The erosion in the fee-for-service (FFS) Medicare population, differences in characteristics and utilization patterns between Puerto Rico's MA and FFS populations, and certain anomalies in the data that Medicare uses to calculate MA benchmarks in Puerto Rico—along with Medicare policies in Puerto Rico that differ from the mainland— create selection bias.

50.   Puerto Rico's 2014 FFS enrollees who have both Parts A and B, which is the population used to set MA benchmarks, accounted for only 12 percent of the total eligible population, and has a much smaller proportion of dual eligible beneficiaries (10 percent) than the MA population (50 percent). This is markedly different from the rest of the nation.

51.   Dual-eligible beneficiaries (Medicare dual eligibles or "duals") refers to those qualifying for both Medicare and Medicaid benefits. Dual-eligibles are often in poorer

health and require more care compared with other Medicare and Medicaid beneficiaries.

52. Puerto Rico is also unique across the nation in that MA enrollment exceeds 75 percent of the Medicare-eligible population (compared with a national average of 32 percent) and has been increasing every year, with 30 percent of Puerto Rico's FFS population switching to MA annually (compared with a national average switch rate of 3-5 percent).

53. Utilization patterns between the populations are also quite distinct, suggesting access issues and differences in severity of illnesses that are not corrected by risk adjustment.

54. This phenomena further depresses Medicare reimbursement rates.

55. Medicare establishes MA benchmarks for counties across the nation based on the cost of serving the corresponding FFS population. Its benchmark methodology assumes that FFS utilization is generally representative of MA utilization, and existing risk adjustment models are not designed to correct for the selection bias in Puerto Rico.

56. Puerto Rico's traditional Medicare (also known as fee-for-service) population is not representative of the island's much larger Medicare Advantage (MA) membership, questioning its use as the foundation for establishing MA benchmarks on the island.

57. The net effect of differences in utilization and demographics for the two populations, historically depressed payment rates, and different Medicare services on the island

compared to the U.S., leads to the conclusion that the FFS utilization under-estimates MA benchmarks.

58.   The MA benchmark in Puerto Rico, a national outlier, is currently $473 per beneficiary, or 43% below the U.S. average of $830, 38% below the state with the next lowest benchmark, and 26% below the U.S. Virgin Islands, another U.S. territory located less than 80 miles from San Juan.

59.   By the end of 2017, Puerto Rico will have lost approximately $4 billion in aggregate MA funding since 2011. These funding cuts have already resulted in substantial benefit reductions and increased pressures to reduce provider compensation, which has contributed to the loss of over 3,000 physicians to the United States mainland since cuts associated with the Affordable Care Act began.


*Puerto Rico is excluded from Medicare Part D Low Income Subsidies*

60.   Medicare Part D is a voluntary, outpatient prescription drug benefit.  Part D provides coverage through Medicare Advantage (MA-PDs) plans that offer coverage as part of a broader, manage care plan.

61.   In the 50 States, dual eligible beneficiaries and other beneficiaries that meet certain income criteria are eligible for Part D low income subsidies (LIS) .

62.   Low income Part D enrolles tend to be in worse health and to have higher prescription drug expenditures than non-LIS enrollees.

63.    United States citizens residing in Puerto Rico are excluded form the LIS.

64.    Plaintiff Med Centro is required to provide health care services to Medicare beneficiaries as if it were located in any of the 50 States notwithstanding the depressed and discriminatory reimbursement rates it receives.

### III.    State Children's Health Insurance Program

65.    The State Children's Health Insurance Program (CHIP) is a means tested program that provides health coverage to targeted low income children and pregnant women in families that have annual income above Medicaid eligibility levels but have no health insurance.

66.    It is jointly funded by states and the federal government.

67.    Puerto Rico must comply with all federal CHIP requirements as if it were a state. However, its not funded as if it were a state.  Instead, there is stand alone legislation designed for Puerto Rico that assures significantly lower funding than it would otherwise receive under the general formula.

68.    CHIP funding for the States is based on the number of low income children residing in each state. 42 U.S.C. 1397dd(b).

69.    The poverty rate in Puerto Rico is higher than any other State and has the highest per capita number of children living below the poverty line.  However, unlike in all states, Puerto Rico's CHIP funding is not based on the number of its poor children.  It is an

arbitrary "allotment" of less than .25% carved out from the total CHIP appropriation. 42 U.S.C. 1397dd(c)(1).

70.    Furthermore, the state - federal cost sharing proportion is based on each states's FMAP percentage.

71.    Therefore, Puerto Rico's CHIP program is burdened by two discriminatory caps: (1)a funding allotment not based on the number of children and (2) a federal matching rate limited to territorial cap of 55% (instead of the maximum 83%).

72.    Plaintiff Med Centro is required to provide health care services to CHIP beneficiaries as if it were located in any of the 50 States notwithstanding the depressed and discriminatory reimbursement rates it receives.


IV.    **Puerto Rico's current economic situation.**

73.    The Congressional Task Force on Economic Growth in Puerto Rico[9] has recognized that Puerto Rico's disparate treatment in Medicaid funding "has been a meaningful factor contributing to Puerto Rico's [current] financial condition.[10]   Accordingly, the

---

[9]

 On June 30, 2016, the Puerto Rico Oversight, Management, and Economic Stability Act, or "PROMESA," was enacted into law as Public Law 114-187. Section 409 of PROMESA established an eight-member "Congressional Task Force on Economic Growth in Puerto Rico" ("Task Force").

[10]

Congressional Task Force on Economic Growth in Puerto Rico, *Report to House and Senate*, December 20, 2016.

circumstances are ripe for the Court to take up the issue Puerto Rico's disparate treatment in Medicaid, Medicare and CHIP  funding under the Equal Protection Clause of the United States Constitution.  Plaintiffs posit that strict scrutiny is available to protect all United States citizens residing in Puerto Rico  from discriminatory federal legislation.

74.     The stand alone rules Congress has establishes solely for Puerto Rico are *prima facie* evidence of Congress' intent to discriminate against a class of United States citizens. Absent judicial intervention, Congress' continued patter of discrimination will perpetuate a second class health care system for United States citizens residing in Puerto Rico.

<u>Count One</u>

VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES
CONSTITUTION
(Equal Protection Clause)

<u>(On behalf of all Plaintiffs)</u>

75.     The foregoing allegations are realleged and incorporated herein.

76.     Plaintiffs are considered a "person" under the Fifth Amendment.

77.     The ties between the United States and Puerto Rico have strengthened in a constitutionally significant manner over the last 100 years.  Congress is no longer justified in treating Puerto Rico as an unincorporated territory of dissimilar traditions

and institutions, when the Constitutional reality is otherwise.  It is up to the Judicial

Branch to determine when and where the full terms of the Constitution apply.

78.   The *de facto* Congressional incorporation of Puerto Rico throughout the past century

has extended the entire Constitution to the island, and today entitles the territory and

United States citizens residing in Puerto Rico to the enjoyment of all rights and

obligations under the Constitution.

79.   Under the Equal Protection Clause a heightened level of scrutiny is available to

protect the United States citizens living in Puerto Rico from discriminatory federal

legislation.

80.   Congress' disparate and discriminatory treatment in Medicaid funding against United

States citizens residing in Puerto Rico is subject to strict scrutiny under equal

protection grounds.  Accordingly, the government must show that such disparate

treatment promotes a *compelling* state interest *and* such discrimination is *narrowly*

*tailored* to achieve the compelling state interest.

81.   Furthermore, Congress' continued discrimination in health care funding has

exacerbated Puerto Rico's health care crisis.  All health care indicators, such as

chronic illnesses, infant mortality, diabetes, show that United States citizens residing

in Puerto Rico receive sub-par health care.  Any rational basis for such discrimination

that might have been reasonable in the past can no longer stand.

82.   Defendants' unconstitutional actions caused Plaintiffs, and other similarly situated, harm.  Accordingly, they are entitled to injunctive and declaratory relief, in additional to all such other relief this Court deems just and proper including costs and attorney's fees in this action.

## Count Two

### VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (Equal Protection Clause)

### (On behalf of the Martinez-Tull and Montalvo-Martell Plaintiffs)

83.   The foregoing allegations are realleged and incorporated herein.

84.   The right to travel and to freedom of movement, particularly within the United States, are fundamental rights of all citizens of the United States.

85.   Similarly, the freedom to reside anywhere within the United States is a fundamental right of all citizens of the United States.

86.   The discriminatory practices described herein have restricting, inhibiting, chilling and penalizing effects on Plaintiffs' exercise of a fundamental constitutional right. That is, to choose to live in Puerto Rico.  These Congressional discriminatory practices can only survive strict scrutiny if there is a compelling governmental interest.

87.   There is no compelling government interest in penalizing United States citizens who choose to live in Puerto Rico.

88.    The discriminatory practices described herein also affect with equal force United States citizens living in the 50 States.

89.    Although a United States citizen living in any of the 50 States would only be subject to these discriminatory practices upon his arrival in Puerto Rico, the statutory prohibitions that permit this result came into play from the very moment when they exerted their force upon all citizens of the United States.   These discriminatory practices exert restricting, inhibiting, chilling and penalizing effects on all U.S. citizens residing in the United States.   That is, to choose to move and live in Puerto Rico.

*Prayer for Relief*

WHEREFORE, plaintiffs respectfully request:

1.    A speedy hearing of this action under Rule 57 of the Federal Rules of Civil Procedure.

2.    A declaratory judgment that Defendants' policies, practices, applicable statutes and customs violate the Fifth Amendment to the United States Constitution;

3.    An injunction that requires Defendants to remedy the constitutional violations identified above.   To wit, that all United States citizens residing in Puerto Rico be subject to the same obligations and rights in the Medicaid, Medicare and CHIP programs as any other citizen in the 50 states;

4.    A trial by jury;

<u>Consejo de Salud de Puerto Rico, Inc., et. al. v. United States</u>                *Complaint*
<u>of America, et. al.,</u>

5.      An award of attorney's fees, costs, and expenses of all litigation pursuant to 28 U.S.C.

§2412; and,

6.      Such other and further relief as the Court deem proper and just.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, January 29, 2018.

**s/ José Oswaldo Coll**\*            **s/ Ignacio Fernández de Lahongrais**
JOSE OSWALDO COLL               IGNACIO FERNANDEZ DE LAHONGRAIS
PO Box 432                      USDC - PR 211603
Mercedita, Puerto Rico 00715-0432   Capital Center Sur, Suite 202
Tel. 787-843-1301               Avenida Arterial Hostos #239
joccoll1@gmail.com              San Juan, Puerto Rico 00918-1475
                                Tel. 787-923-5789
                                ignaciofernandez@bufetefernandezalcaraz.com

*\*Attorney to be admitted Pro Hac Vice*